**THE ATKIN FIRM, LLC**
Formed in the State of New Jersey
By: John C. Atkin, Esq.
55 Madison Avenue, Suite 400
Morristown, NJ 07960
Tel.: (973) 314-8010 / Fax: (833) 693-1201
JAtkin@atkinfirm.com
*Attorneys for Plaintiff Strike 3 Holdings, LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>       Plaintiff,<br><br>  v.<br><br>JOHN DOE subscriber assigned IP address 69.142.247.244,<br><br>       Defendant. | Civil Case No. 3:23-cv-23380-RK-JBD<br><br>**MOTION RETURN DATE:**<br>February 5, 2024<br><br>*Document Filed Electronically* |

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA PRIOR TO THE RULE 26(f) CONFERENCE

---

Of Counsel and on the brief:
    John C. Atkin, Esq.

## **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................1

II.  BRIEF FACTUAL BACKGROUND .................................................2

   A. Plaintiff is a Victim of Rampant Copyright Infringement. ............................2

   B. Plaintiff Brings Its Litigation in Good Faith. ..................................4

   C. There is a Reasonable Inference that Doe is the Infringer. ...........................6

   D. A Court Order is Required to Advance this Litigation. ..................................7

III. LEGAL ARGUMENT......................................................................8

   A. Legal Standard Governing Expedited Discovery Requests To Identify An
     Anonymous Defendant. ..................................................8

   B. There Is Good Cause for this Court to Grant Plaintiff's Motion for Expedited
     Discovery...................................................................10

     1. Plaintiff's Complaint States A *Prima Facie* Claim for Direct Copyright
       Infringement. ........................................................11

     2. The Timing of the Request in Light of the Formal Start to Discovery
       Favors Granting Relief. ................................................17

     3. Plaintiff's Request is Narrowly Tailored and Identifies the Limited and
       Specific Information Sought. ...........................................18

     4. The Purpose of the Requested Discovery and the Need for the
       Information Sought in Order to Advance the Claim Favors Granting
       Relief. ..................................................................19

     5. The Discovery Does Not Burden Doe or Require Doe to Respond in an
       Expedited Manner. .....................................................20

     6. There Are No "Alternative Means" to Uncover Doe's True Identity......20

     7. Doe's Minimal Privacy Interest Is Substantially Outweighed by
       Plaintiff's Interest in Protecting Its Copyrights..........................22

   C. Plaintiff Takes No Position on the Entry of a Protective Order....................23

CONCLUSION ...............................................................................25

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Alston v. Parker*,
  363 F.3d 229 (3d Cir. 2004) ....................................................... 9, 17, 19

*Arista Records, LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010) ..............................................................18

*Athill v. Speziale*,
  No. 06-4941, 2009 WL 1874194 (D.N.J. June 30, 2009) ......................9

*BMG Rights Mgmt. (US) LLC v. Cox Commc'n., Inc.*,
  881 F.3d 293 (4th Cir. 2018) ..............................................................4

*Call of the Wild Movie, LLC v. Does 1-1,062*,
  770 F. Supp. 2d 332 (D.D.C. 2011)....................................................21

*Cobbler Nevada LLC v. Gonzalez*,
  901 F.3d 1142 (9th Cir. 2018) ................................................ 8, 15, 16

*Connelly v. Lane Const. Corp.*,
  809 F.3d 780 (3d Cir. 2016) ..............................................................11

*CSC Holdings, Inc. v. Redisi*,
  309 F.3d 988 (7th Cir. 2002)..............................................................23

*Eldred v. Ashcroft*,
  537 U.S. 186 (2003)............................................................................6

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991)..........................................................................11

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
  139 S. Ct. 881 (2019)........................................................................12

*Glacier Films (USA), Inc. v. Turchin*,
  896 F.3d 1033 (9th Cir. 2018) .................................................... 6, 7, 8

*In re Fine Paper Antitrust Litig.*,
  685 F.2d 810 (3d Cir. 1982) ................................................................9

*John Wiley & Sons, Inc. v. Doe Nos. 1-30*,
  284 F.R.D. 185 (S.D.N.Y. 2012) ................................................ 18, 21

*Kansas v. Glover*,
  140 S. Ct. 1183 (2020)....................................................................7, 14

*Kay Berry, Inc. v. Taylor Gifts, Inc.*,
  421 F.3d 199 (3d Cir. 2005) ..............................................................12

*Kirtsaeng v. John Wiley & Sons, Inc.*,
  579 U.S. 197 (2016)............................................................................6

*Malibu Media, LLC v. Doe*,
  No. 12-07789, 2014 WL 229295 (D.N.J. Jan. 21, 2014) .....................20

*Malibu Media, LLC v. Doe*,
  No. 13-2864, 2013 WL 2392923 (E.D. Pa. May 31, 2013) ..................................11
*Malibu Media, LLC v. Doe*,
  No. 13-365, 2014 WL 7188822 (D. Md. Dec. 16, 2014) .......................................8
*Malibu Media, LLC v. Doe*,
  No. 15-4381, 2015 WL 4923114 (S.D.N.Y. Aug. 18, 2015) ................................5
*Malibu Media, LLC v. Doe*,
  No. 16-1739, 2017 WL 1050573 (D.N.J. Mar. 20, 2017) ....................................13
*Malibu Media, LLC v. Doe*,
  No. 18-5792, 2019 WL 7876473 (N.D. Ill. Jan. 2, 2019) ....................................15
*Malibu Media, LLC v. Doe*,
  No. 18-766, 2018 WL 2386068 (D. Conn. May 25, 2018) ..................................18
*Malibu Media, LLC v. Doe*,
  No. 19-2347, 2019 WL 4305486 (D.D.C. Sept. 11, 2019) ..................................15
*Malibu Media, LLC v. John Does 1-15*,
  No. 12-2077, 2012 WL 3089383 (E.D. Pa. July 30, 2012) ..................................19
*Malibu Media, LLC v. Park*,
  No. 17-12107, 2019 WL 2960146 (D.N.J. July 9, 2019) .....................................15
*Malibu Media, LLC v. Rahusen*,
  No. 14-6976, 2015 WL 2231853 (D.N.J. May 11, 2015) ....................................15
*ME2 Prods., Inc. v. Kariuki*,
  No. 17-1077, 2018 WL 2088306 (W.D. Wash. May 4, 2018) ............................13
*Royal Indem. Co. v. Petrozzino*,
  598 F.2d 816 (3d Cir. 1979) ...............................................................................12
*Schmidt v. Skolas*,
  770 F.3d 241 (3d Cir. 2014) ...............................................................................13
*Scott v. Vantage Corp.*,
  64 F.4th 462 (3d Cir. 2023) ..................................................................................5
*Sony Music Entm't Inc. v. Does 1-40*,
  326 F. Supp. 2d 556 (S.D.N.Y. 2004) ................................................................19
*Strike 3 Holdings, LLC v. Adaire*,
  No. 20-676, 2023 WL 2245394 (M.D. Fla. Jan. 18, 2023) ..................................5
*Strike 3 Holdings, LLC v. Doe*,
  330 F.R.D. 552 (D. Minn. 2019) .........................................................................23
*Strike 3 Holdings, LLC v. Doe*,
  337 F. Supp. 3d 246 (W.D.N.Y. 2018) .................................................................5
*Strike 3 Holdings, LLC v. Doe*,
  637 F. Supp. 3d 187 (D.N.J. 2022) .....................................................................24
*Strike 3 Holdings, LLC v. Doe*,
  964 F.3d 1203 (D.C. Cir. 2020) .................................................................. *passim*

*Strike 3 Holdings, LLC v. Doe*,
   No. 18-12585, 2019 WL 5446239 (D.N.J. Oct. 24, 2019) ...................................24
*Strike 3 Holdings, LLC v. Doe*,
   No. 18-12585, 2020 WL 3567282 (D.N.J. June 30, 2020) ......................... *passim*
*Strike 3 Holdings, LLC v. Doe*,
   No. 18-12609, D.E. 16 (D.N.J. June 27, 2019) ...................................................23
*Strike 3 Holdings, LLC v. Doe*,
   No. 18-14138, D.E. 15 (D.N.J. June 27, 2019) ...................................................23
*Strike 3 Holdings, LLC v. Doe*,
   No. 18-16593, 2019 WL 4745360 (D.N.J. Sept. 30, 2019)......................... *passim*
*Strike 3 Holdings, LLC v. Doe*,
   No. 18-2019, 2018 WL 10604533 (N.D. Cal. Sept. 14, 2018).............................5
*Strike 3 Holdings, LLC v. Doe*,
   No. 18-2637, 2019 WL 935390 (E.D. Cal. Feb. 26, 2019) .............................8, 17
*Strike 3 Holdings, LLC v. Doe*,
   No. 18-2648, 2019 WL 78987 (S.D.N.Y. Jan. 2, 2019)......................... 21, 23, 24
*Strike 3 Holdings, LLC v. Doe*,
   No. 18-569, 2018 WL 4109394 (W.D.N.Y. Aug. 28, 2018)...............................21
*Strike 3 Holdings, LLC v. Doe*,
   No. 19-10252, 2020 WL 5525549 (D.N.J. Sept. 14, 2020)................... 14, 17, 24
*Strike 3 Holdings, LLC v. Doe*,
   No. 19-16182, 2019 WL 3985628 (D.N.J. Aug. 23, 2019).................................10
*Strike 3 Holdings, LLC v. Doe*,
   No. 19-167, 2019 WL 1865919 (N.D. Cal. Apr. 25, 2019) .................................7
*Strike 3 Holdings, LLC v. Doe*,
   No. 19-22743, D.E. 13 (S.D. Fla. Sept. 20, 2019).................................................7
*Strike 3 Holdings, LLC v. Doe*,
   No. 19-2552, 2019 WL 4855039 (S.D.N.Y. Oct. 2, 2019) ...................... 7, 15, 19
*Strike 3 Holdings, LLC v. Doe*,
   No. 19-396, 2020 WL 917090 (D. Md. Feb. 25, 2020)......................................14
*Strike 3 Holdings, LLC v. Doe*,
   No. 19-723, 2019 WL 2996428 (N.D. Cal. July 9, 2019) ..................................16
*Strike 3 Holdings, LLC v. Doe*,
   No. 21-17860, 2022 WL 2274473 (D.N.J. June 23, 2022) .................................24
*Strike 3 Holdings, LLC v. Doe*,
   No. 21-3702, D.E. 29 (E.D. Pa. Apr. 22, 2022) .................................................15
*Strike 3 Holdings, LLC v. Doe*,
   No. 21-5178, 2022 WL 2276352 (E.D. Pa. June 22, 2022) ................................24
*Strike 3 Holdings, LLC v. Gray*,
   No. 20-5122, 2022 WL 952728 (E.D. Pa. Mar. 30, 2022) ..................................15

*Strike 3 Holdings, LLC v. Vokoun*,
  No. 20-14321, 2022 WL 310201 (D.N.J. Feb. 2, 2022)........................................15
*U.S. v. Christie*,
  624 F.3d 558 (3d Cir. 2010) ...............................................................................22
*W. Coast Prods., Inc. v. Does 1-1,434*,
  No. 11-55, 2012 WL 10132002 (D.D.C. Aug. 6, 2012)......................................20

## Statutes

17 U.S.C. § 106 .......................................................................................................12
17 U.S.C. § 410 .......................................................................................................12
17 U.S.C. § 503 .........................................................................................................4
17 U.S.C. § 504 .........................................................................................................4
17 U.S.C. § 505 .........................................................................................................4
47 U.S.C. § 522 .......................................................................................................21
47 U.S.C. § 551 ................................................................................................ *passim*

## Other Authorities

David Blackburn, Jeffrey A Eisenach & David Harrison, *Impacts of Digital Video
  Piracy on the U.S. Economy* (June 2019) .............................................................3

## Rules

Fed. R. Civ. P. 26 ............................................................................................ 1, 9, 15

## I.   INTRODUCTION

Plaintiff Strike 3 Holdings, LLC ("Plaintiff"), by and through its counsel, The Atkin Firm, LLC, submits this memorandum of law in support of its motion for leave to serve a third-party subpoena prior to the Rule 26(f) conference, pursuant to Federal Rule of Civil Procedure 26(d)(1).

Plaintiff is part of a creative enterprise that produces original, award-winning adult motion pictures. Unfortunately, in entertainment, success often begets piracy. To combat the mass infringement of its copyrighted works, Plaintiff has developed proprietary software, which has detected the infringement of Plaintiff's content at issue in this matter, specifically, that Defendant John Doe subscriber assigned IP address 69.142.247.244's ("Doe") was illegally distributing several of Plaintiff's motion pictures over a substantial period of time.

BitTorrent use is anonymous (revealing only the infringer's IP address), and Congress has prohibited Internet Service Providers ("ISPs") from disclosing an IP address subscriber's information absent a court order. *See Cable Communications Policy Act of 1984* ("CCPA"), 47 U.S.C. § 551 *et seq.* Accordingly, Plaintiff now seeks leave to serve limited, immediate discovery on Doe's ISP, Comcast Cable ("Comcast Cable"), in the form of a Rule 45 subpoena seeking only the name and address of the subscriber assigned this IP address at the exact date and time of one (1) instance of recorded infringement.

This information is necessary, relevant, and proportional to the needs of this case, enabling Plaintiff to learn Doe's identity, investigate Doe's role in the infringement (including whether other individuals exist with sufficient access to the IP address during the period of infringement and, thus, might plausibly be the "true" infringer), and—if an adequate, good faith basis exists to further identify Doe (or someone else) as the infringer, beyond their mere association with the IP address—to amend its complaint accordingly and effectuate service of process. Plaintiff will only use this information to prosecute the claims made in its Complaint and any amended pleading in this matter. Without this information, Plaintiff cannot pursue this lawsuit to protect its copyrights.

## II.    BRIEF FACTUAL BACKGROUND

### A.    Plaintiff is a Victim of Rampant Copyright Infringement.

Plaintiff holds title to the intellectual property associated with the *Blacked*, *Blacked Raw*, *MILFY*, *Slayed*, *Tushy*, *Tushy Raw*, and *Vixen* adult brands, including the copyrights to each of the motion pictures ("Works") distributed through each brands' website. *See* Declaration of David Williamson, ¶ 13, attached hereto as Exhibit A ["Williamson Decl."]. Although it started out small, the brands' websites now host approximately 15 million visitors each month. *Id.* at ¶ 14. This success is no fluke. Plaintiff's philosophy is to pay artists and models an amount above that being paid by other companies and focuses on delivering

superior quality films. *Id.* at ¶¶ 15–17. Plaintiff's works are known for having some of the highest production budgets of any in the adult industry. *Id.* at ¶ 19.

Because of this commitment to quality, the websites for the brands have a subscriber base that is one of the highest of any adult site in the world. *Id.* at ¶ 20. Plaintiff is also frequently the number one seller of adult DVDs in the United States. *Id.* at ¶ 21. Finally, Plaintiff's content is licensed throughout the world, including by most major cable networks. *Id.* at ¶ 22. This success has led to numerous awards, such as "adult site of the year," "best marketing campaign – company image," and "best cinematography." *Id.* at ¶ 23.

Unfortunately, as Plaintiff has grown, so too has piracy of its works, *id.* at ¶¶ 26–30, which causes tremendous damage.[1] Plaintiff pursues infringers as a costly but necessary way of maintaining the viability of its business and in fairness to its loyal customers, who pay for what others are stealing on a massive scale. *Id.* at ¶¶ 28–32, 37, 39. To continue providing value for its subscribers, exciting and inspiring projects for performers, and top-paying jobs and growth in the adult entertainment community, Plaintiff must protect its copyrights. *Id.* at ¶¶ 18, 39.

---

[1] *See* David Blackburn, Jeffrey A Eisenach & David Harrison, *Impacts of Digital Video Piracy on the U.S. Economy* (June 2019), *available at* https://www.theglobalipcenter.com/wp-content/uploads/2019/06/Digital-Video-Piracy.pdf.

Although Plaintiff has attempted to curb this mass infringement by sending thousands of "take-down" notices under the Digital Millennium Copyright Act ("DMCA"),[2] individual suits like this one against extreme infringers are also necessary to (1) generally deter mass piracy and redirect infringers into the readily accessible and legal market for its Works, (2) specifically deter (and enjoin) Doe from continuing to infringe Plaintiff's Works, (3) destroy the infringing copies of the Works that Doe has in his possession and is distributing using BitTorrent, and (4) obtain compensation for the infringement that has occurred. *See* 17 U.S.C. §§ 503(b); 504(a), (c); 505. These remedies are available solely thought the Copyright Act, and not the DMCA.

### B.   Plaintiff Brings Its Litigation in Good Faith.

Plaintiff is mindful of the nature of this litigation and its goal is not to publicly disclose the choices that people make regarding the content they wish to enjoy. Plaintiff does not believe anyone should be embarrassed about enjoying Plaintiff's works (they just need to pay for that right, not steal it), and—to the

---

[2] DMCA notices of infringement, which are sent to ISPs in the (usually futile) hope they will be forwarded to the infringers, *cf. BMG Rights Mgmt. (US) LLC v. Cox Commc'n., Inc.*, 881 F.3d 293, 300, 304 (4th Cir. 2018), are different from the DMCA take-down notices Plaintiff sends to websites hosting infringing content. *See* Williamson Decl., at ¶ 31; *Strike 3 Holdings, LLC v. Doe*, No. 18-12585, 2020 WL 3567282, at *9 (D.N.J. June 30, 2020) (holding that utilization of DMCA notice procedure is "not relevant" to Plaintiff's motion for expedited discovery).

extent courts permit such relief—Plaintiff does not oppose requests to defend these claims under a pseudonym on the public docket. *See infra* Sec. III.C.

Plaintiff only files suit against extreme infringers who are engaged in both illegal downloading and the large-scale unauthorized distribution of its works, and only proceeds with amended complaints based on strong evidence. Williamson Decl. at ¶ 34; *see Strike 3 Holdings, LLC v. Doe*, 337 F. Supp. 3d 246, 257 (W.D.N.Y. 2018) (observing that Plaintiff is "ready and willing to litigate the cases it files"); *Strike 3 Holdings, LLC v. Doe*, No. 18-2019, 2018 WL 10604533, at *3 (N.D. Cal. Sept. 14, 2018) (observing that "in contrast to parties that might simply file lawsuits to encourage defendants to settle, Plaintiff appears to be following through with litigation"); *see generally Strike 3 Holdings, LLC v. Adaire*, No. 20-676, 2023 WL 2245394 (M.D. Fla. Jan. 18, 2023).

While the strength of Plaintiff's claims—and the defendant's culpability—often result in their resolution by settlement, *see Malibu Media, LLC v. Doe*, No. 15-4381, 2015 WL 4923114, at *1 n.4 (S.D.N.Y. Aug. 18, 2015), Plaintiff does not seek to force anyone to settle unwillingly, especially anyone that is innocent. Williamson Decl. at ¶¶ 33, 35. *Compare Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1213 (D.C. Cir. 2020) (holding "the fact that many such lawsuits settle or are dismissed at an early stage [is not] necessarily suggestive of improper intent") *with Scott v. Vantage Corp.*, 64 F.4th 462, 472–73 (3d Cir. 2023) (affirming sanction

where plaintiffs filed securities claims to "force a settlement" to recoup investment they had no right to rescind, and cautioning courts to be "wary" of imposing similar sanctions "when a plaintiff files a lawsuit alleging colorable claims yet has the ultimate goal of settling those claims"). Plaintiff's claims are meritorious and fit squarely within the Copyright Act, *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1041 (9th Cir. 2018), which encourages rightsholders to protect—and profit from—their creative works. *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 205 (2016); *Eldred v. Ashcroft*, 537 U.S. 186, 212 n.18 (2003).

In sum, Plaintiff is careful to only proceed to litigation with strong cases, when it has a good faith basis for doing so, to enforce its rights in a way that is mindful of the defendant's presumed privacy interests. Plaintiff's goals are to deter piracy, seek redress for its harmful consequences, and to redirect infringers into legitimate avenues to acquire access to Plaintiff's works.

### C.   There is a Reasonable Inference that Doe is the Infringer.

Plaintiff, using its proprietary forensic software, VXN Scan ("VXN"), monitored and detected the infringement of Plaintiff's content at issue in this matter. *See* Williamson Decl. at ¶¶ 40–82; Declaration of Patrick Paige, attached hereto as Exhibit B ["Paige Decl."], at ¶¶ 13–28. VXN discovered that Doe's IP address was illegally distributing several of Plaintiff's motion pictures over a substantial time period. *See* D.E. 1, 1-1. This IP address was assigned to Doe by

their ISP, which is the only entity with the information necessary to identify Doe, by correlating the IP address with Doe's identity at a specific time when infringement was recorded. Paige Decl. at ¶ 28. Although it is theoretically possible that other individuals exist who also had sufficient access to Doe's IP address during the substantial period of alleged infringement, and, therefore, *could* be the infringer, *see infra* Sec. III.B.1, the existence of these additional individuals is purely speculative, and, more importantly, irrelevant at this juncture.[3] At this stage, the only person that can be shown to definitively (1) exist and (2) have sufficient access to the IP address during the period of infringement is the subscriber: Doe. *See Kansas v. Glover*, 140 S. Ct. 1183, 1186–91 (2020) (recognizing reasonable inference that owner is also driver of vehicle in absence of negating information). Thus, as discussed in more detail below, at this stage there is a reasonable inference that Doe is the infringer.

### D.   A Court Order is Required to Advance this Litigation.

Although these suits "fit[] squarely within the tradition of copyright enforcement," *Glacier Films*, 896 F.3d at 1041, the anonymity afforded by BitTorrent, along with the CCPA's qualified privacy interest for subscriber data,

---

[3] *See Strike 3 Holdings, LLC v. Doe*, No. 19-2552, 2019 WL 4855039, at *2 (S.D.N.Y. Oct. 2, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 19-22743, D.E. 13 at 6–8 (S.D. Fla. Sept. 20, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 19-167, 2019 WL 1865919, at *2 (N.D. Cal. Apr. 25, 2019).

presents a unique obstacle. The only lawful way Plaintiff (and other copyright holders) have of directly combating mass infringement is to discover the name of the person assigned the IP address used to commit the infringement, *id.* at 1036, and then determine whether it can further identify that person (or someone else) as the infringer. *Cobbler Nevada LLC v. Gonzalez*, 901 F.3d 1142, 1147 (9th Cir. 2018); *see Strike 3 Holdings, LLC v. Doe*, No. 18-2637, 2019 WL 935390, at *4 (E.D. Cal. Feb. 26, 2019) ("*Cobbler*[] did not disturb the Ninth Circuit's decision in *Glacier Films*[.]"). Rightsholders can only do that by obtaining court authorization to serve a subpoena on the ISP to identify the subscriber, 47 U.S.C. § 551, *et seq.*, which first requires that suit be filed naming the subscriber as the placeholder defendant. *See Malibu Media, LLC v. Doe*, No. 13-365, 2014 WL 7188822, at *6–9 (D. Md. Dec. 16, 2014) (Grimm, J.). As a result, courts across the country have adopted "sensible" and "practical" procedures to permit limited "early discovery" of a subscriber's identity so that these suits may either advance or be promptly dismissed. *Glacier*, 896 F.3d at 1036, 1038, 1040.

## III.   LEGAL ARGUMENT

### A.   Legal Standard Governing Expedited Discovery Requests To Identify An Anonymous Defendant.

Cases such as this are the paradigm for when leave to conduct pre-Rule 26(f) conference discovery should be allowed. "In cases involving as-yet-unknown defendants, in which the plaintiff cannot serve its complaint—much less confer

with the defendant—without obtaining identifying information from a third party, 'the *only* potential avenue for discovery is a court order under Rule 26(d)(1).'" *Strike 3*, 964 F.3d at 1207 (cleaned up) (emphasis added). The Third Circuit has instructed that where discovery is sought that "would aid in the identification of responsible defendants or the lack thereof, district courts *should strongly consider granting it*." *Alston v. Parker*, 363 F.3d 229, 233 n.6 (3d Cir. 2004) (emphasis added); *Athill v. Speziale*, No. 06-4941, 2009 WL 1874194, at *14 (D.N.J. June 30, 2009). "In conducting any discovery inquiry, the Third Circuit has suggested that district courts risk reversal if their rulings will make it impossible for any party to 'obtain crucial evidence[.]'" *Strike 3*, 2020 WL 3567282 at *5 (quoting *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 818 (3d Cir. 1982)).

Although "Rule 26(d) does not set a standard for determining when expedited discovery should be permitted," courts in this District examine seven (7) non-exclusive factors when evaluating whether to permit expedited discovery:

(1) the plaintiff's ability to make out a *prima facie* showing of infringement;

(2) the timing of the request in light of the formal start to discovery;

(3) whether the request is narrowly tailored and the specificity of the discovery request;

(4) the purpose of the requested discovery and the need for the information sought in order to advance the claim;

(5) whether the discovery burdens the defendant and whether the defendant can respond to the request in an expedited manner;

(6) the absence of alternative means for obtaining the information sought in the subpoena; and

(7) the defendant's expectation of privacy.

In sum, "[g]ood cause exists where 'the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.'"[4] *Strike 3 Holdings, LLC v. Doe*, No. 19-16182, 2019 WL 3985628, at *1 (D.N.J. Aug. 23, 2019) (citation omitted).

### B.   There Is Good Cause for this Court to Grant Plaintiff's Motion for Expedited Discovery.

Although "[c]ommon sense dictates" that early discovery of the relevant, proportional, and "crucial" evidence sought by Plaintiff is required so that this case can either proceed or be voluntarily dismissed, the Court must nevertheless determine whether "good cause" exists to provide this discovery in an expedited

---

[4] The United States Court of Appeals for the District of Columbia Circuit reversed a decision denying a similar request for expedited discovery as an abuse of discretion—for several reasons—and noted that the "good cause" requirement in Rule 26(b) was eliminated by amendment in 2015, which replaced it "with the overarching relevance and proportionality standard[.]" *Strike 3*, 964 F.3d at 1207 n.2. The D.C. Circuit concluded that the district court's decision "was an abuse of discretion under any applicable standard," and, therefore, did not reach whether the "good cause" standard "continues to apply under the current version of Rule 26." *Id.* Importantly, there is no conflict between the D.C. Circuit's decision and caselaw in this District, which looks to the "good cause" factors not to determine whether this information is relevant, but rather to determine whether to permit expedited discovery to obtain it. *Strike 3*, 2020 WL 3567282 at *7 n.4.

fashion. *Strike 3*, 2020 WL 3567282 at *8. As discussed in more detail below, these factors all support permitting limited expedited discovery in this matter.

### 1. Plaintiff's Complaint States A *Prima Facie* Claim for Direct Copyright Infringement.

To state a *prima facie* claim for copyright infringement, *see* D.E. 1-1, Plaintiff must allege (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Plaintiff accomplishes this by alleging: (1) "Plaintiff is the owner of the Works, which are each an original work of authorship"; (2) "Plaintiff owns the copyrights to the Works and the Works have been registered with the United States Copyright Office"; (3) "[d]efendant copied and distributed the constituent elements of Plaintiff's Works using the BitTorrent protocol"; and (4) "[a]t no point in time did Plaintiff authorize, permit, or consent to Defendant's distribution of its Works, expressly or otherwise." D.E. 1 at ¶¶ 45, 48–50.

These allegations "quite clearly" and "unmistakably" allege the necessary elements of copyright infringement against Doe. *Strike 3*, 2020 WL 3567282 at *5–6; *Malibu Media, LLC v. Doe*, No. 13-2864, 2013 WL 2392923, at *1 (E.D. Pa. May 31, 2013). And these allegations are not "conclusory." Rather, Plaintiff specifically alleges all the necessary "historical fact[s]," *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016), of its claim:  the "who" (the subscriber),

the "what" (copyright infringement of specific works produced by Plaintiff), the "where" (established by geo-location technology), the "when" (recorded down to the minute and second), and the "how" (through the BitTorrent protocol). D.E. 1, 1-1. That Plaintiff cannot—without early discovery—identify Doe by name is irrelevant: "When a plaintiff is aware of an actionable claim but does not know the identity of a defendant, an action may be commenced against John Doe." *Royal Indem. Co. v. Petrozzino*, 598 F.2d 816, 818 (3d Cir. 1979).

First, Plaintiff owns a valid copyright in each Work. *See* 17 U.S.C. § 410(c); D.E. 1 ¶¶ 45, 48. Plaintiff's copyrights were registered with the Copyright Office at the time this suit was filed. *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 886–87 (2019); D.E. 1-1.

Second, Plaintiff has made a plausible *prima facie* showing of "copying" by Doe. "Copying refers to the act of infringing any of the exclusive rights that accrue to the owner of a valid copyright, as set forth at 17 U.S.C. § 106, 'including the rights to distribute and reproduce copyrighted material.'" *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 207 (3d Cir. 2005) (citation omitted). Plaintiff's Complaint alleges that Doe not only downloaded Plaintiff's Works over the BitTorrent network, *see* 17 U.S.C. § 106(1), but also distributed these files to other users in the BitTorrent swarm. *See id.* § 106(3); *see also* D.E. 1 at ¶¶ 4, 28–44, 49.

12

Plaintiff acknowledges it is *possible* that other individuals might (1) exist, (2) have sufficient access to the IP address during the infringement, and (3) be using the IP address to infringe on Plaintiff's copyrights. That is, it is possible Doe might not be the infringer (or might not be the *only* infringer). *See Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014) ("[A] plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense."); *ME2 Prods., Inc. v. Kariuki*, No. 17-1077, 2018 WL 2088306, at *2 (W.D. Wash. May 4, 2018) ("Plaintiff may be wrong—but it is not required to prove its allegations in order to adequately plead a claim of infringement under *Twombly.*"). However, at this juncture, Plaintiff's initial complaint—filed *before* early discovery has occurred— clearly states a claim of infringement against the anonymous subscriber:

> It is plausible [to allege] that files downloaded using a particular IP address were downloaded by the subscriber of that address. The possibility that a family member, guest, or neighbor may have downloaded the Works does not render Plaintiff's claims implausible.

*Malibu Media, LLC v. Doe*, No. 16-1739, 2017 WL 1050573, at *2 (D.N.J. Mar. 20, 2017) (citation omitted); *see also Strike 3*, 964 F.3d at 1211 (noting that it is "undoubtedly true that individuals other than the IP address subscriber may have been responsible for the infringement at issue," but rejecting argument that "this alternative explanation [is] so obvious as to render Strike 3's claim against the subscriber facially implausible"); *Strike 3*, 2020 WL 3567282 at *5–7 (reversing determination that Plaintiff's complaint failed to state a plausible claim).

The potential existence of an infringer *other* than the subscriber is irrelevant at this juncture. *Strike 3 Holdings, LLC v. Doe*, No. 19-10252, 2020 WL 5525549, at *4 (D.N.J. Sept. 14, 2020) (denying motion to quash); *Strike 3 Holdings, LLC v. Doe*, No. 18-16593, 2019 WL 4745360, at *6 (D.N.J. Sept. 30, 2019) (denying motion to quash and holding that "[i]f any defendant could quash a subpoena based on the mere possibility that someone else has used the defendant subscriber's IP address to perpetuate the alleged infringement then a plaintiff would be unable to enforce its rights.") (citation and internal quotation marks omitted). There is a reasonable inference that the subscriber is the infringer based on all currently available evidence, *see Glover*, 140 S. Ct. at 1186, and "it takes no great imagination to see how evidence that a file was downloaded by a certain IP address could support a plausible claim that the file was downloaded by the subscriber at that IP address." *Strike 3 Holdings, LLC v. Doe*, No. 19-396, 2020 WL 917090, at *3 (D. Md. Feb. 25, 2020) (Grimm, J.).

"At this stage, the court is not asked to pass judgment on the strength of the plaintiff's allegations against the defendant, but to determine whether the plaintiff should have the opportunity to name that defendant in the first place." *Strike 3*, 964 F.3d at 1210. "That is precisely what Strike 3 seeks here:  the discovery necessary to reveal the defendant's identity and to begin litigating its infringement claims." *Id*. "[T]he mere possibility that an unnamed defendant may defeat a complaint at a

later stage is not a legitimate basis to deny a Rule 26(d)(1) motion that otherwise satisfies Rule 26's discovery standards." *Id.* at 1211.

Nevertheless, *after* early discovery occurs, it is incumbent on a plaintiff in an Internet piracy matter to conduct a follow-up investigation to determine whether it can allege "something more"—in its *amended* pleading—to further identify the defendant as the infringer, beyond merely being the subscriber (or someone with sufficient access to the IP address during the period of infringement).[5] *See Cobbler*, 901 F.3d at 1145; *Strike 3*, 2019 WL 4855039 at *2; *Strike 3*, 2019 WL 4745360 at *6; *Malibu Media, LLC v. Doe*, No. 18-5792, 2019 WL 7876473, at *2–3 (N.D. Ill. Jan. 2, 2019).

---

[5] VXN has recorded numerous instances of this IP address sharing not only Plaintiff's works, but the mainstream works of others (*e.g.*, movies, television shows, music, software, and books). Once Plaintiff obtains Doe's identity, it can review publicly available data to determine whether a good faith basis exists to further identify Doe, or someone else with sufficient access to the IP address, as the infringer. *See Strike 3 Holdings, LLC v. Doe*, No. 21-3702, D.E. 29 at *1 n.1 (E.D. Pa. Apr. 22, 2022) (Marston, J.); *Malibu Media, LLC v. Rahusen*, No. 14-6976, 2015 WL 2231853, at *4 (D.N.J. May 11, 2015). However, it is not possible to work backwards and use this constellation of evidence to further identify the anonymous infringer without first receiving Doe's identity. *See Strike 3 Holdings, LLC v. Gray*, No. 20-5122, 2022 WL 952728, at *2 (E.D. Pa. Mar. 30, 2022); *Strike 3 Holdings, LLC v. Vokoun*, No. 20-14321, 2022 WL 310201, at *3 (D.N.J. Feb. 2, 2022); *see also Malibu Media, LLC v. Doe*, No. 19-2347, 2019 WL 4305486, at *2 n.2 (D.D.C. Sept. 11, 2019) (distinguishing *Malibu Media, LLC v. Park*, No. 17-12107, 2019 WL 2960146 (D.N.J. July 9, 2019) and granting early discovery).

In *Cobbler*, the Ninth Circuit recognized that early discovery is "part of the puzzle" a plaintiff must solve to further identify the "true" infringer in BitTorrent infringement cases. 901 F.3d at 1145. However, *after* early discovery occurs, the Ninth Circuit held that the plaintiff's claim against the subscriber "standing alone"—as alleged in the amended complaint in that suit—was implausible because the plaintiff's "counsel learned that the internet service was accessible to both residents and visitors at an adult care home, [and counsel expressly] concluded that 'it does not appear that [the subscriber] is a regular occupant of the residence or the likely infringer.'" *Id.* "Although the district court granted leave to depose [the subscriber], the deposition revealed no new information regarding the identity of the actual infringer. Nevertheless, [the plaintiff] filed a First Amended Complaint and named [the subscriber] as the sole Doe." *Id.* That is, *after* early discovery occurred, the plaintiff conceded it did not know who the infringer was, but nevertheless proceeded with a claim against the subscriber based solely on his status as the subscriber.

"Here, by contrast, Strike 3 has not even been able to gather such threshold facts about the alleged infringer." *Strike 3*, 964 F.3d at 1212. As numerous courts have explained, "*Cobbler Nevada* does not stand for the proposition that subpoenas may not be used to determine a subscriber's name." *Strike 3 Holdings, LLC v. Doe*, No. 19-723, 2019 WL 2996428, at *3 (N.D. Cal. July 9, 2019); *see also Strike 3*,

16

2020 WL 5525549 at *4; *Strike 3*, 2019 WL 4745360 at *6; *Strike 3*, 2019 WL 935390 at *4. In short, *Cobbler* provides no basis to deny expedited discovery in these matters. "The mere fact that discovery *may* demonstrate that the subscriber is not the proper defendant is no basis to close the courthouse doors before Strike 3 can step inside." *Strike 3*, 964 F.3d at 1209.

Plaintiff has "unmistakably allege[d] that Defendant[] infringed upon Plaintiff's copyrighted material by downloading copies of protected works. Therefore, Plaintiff states a *prima facie* case for copyright infringement." *Strike 3*, 2020 WL 3567282 at *5–6. "Because Plaintiff has sufficiently stated a viable claim of copyright infringement against the identified IP address[] and its placeholder-defendant subscriber[], Plaintiff should be provided with discovery to further assist it in identifying the underlying wrongdoer." *Id.* at *7.

**2.    The Timing of the Request in Light of the Formal Start to Discovery Favors Granting Relief.**

The Third Circuit has instructed that, "[i]f discovery is sought by a plaintiff, as it was here, and if it would aid in the identification of responsible defendants or the lack thereof, district courts should strongly consider granting it." *Alston*, 363 F.3d at 233 n.6. Thus, this factor "weighs in favor of permitting expedited discovery of the limited type Plaintiff seeks[.]" *Strike 3*, 2020 WL 3567282 at *8; *see also Strike 3*, 964 F.3d at 1207.

### 3. Plaintiff's Request is Narrowly Tailored and Identifies the Limited and Specific Information Sought.

Plaintiff's request is also narrowly tailored and sufficiently specific. The "specificity" required by this factor refers to "[the] specificity of the *discovery request*." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010) (emphasis added). To satisfy this element a plaintiff must seek "concrete and narrow information: the name and address of the subscriber associated" with the IP address being used to commit the alleged infringement. *John Wiley & Sons, Inc. v. Doe Nos. 1-30,* 284 F.R.D. 185, 190 (S.D.N.Y. 2012). "Courts have labeled the subscriber's identity and address as 'highly specific'" in these cases. *Malibu Media, LLC v. Doe*, No. 18-766, 2018 WL 2386068, at *3 (D. Conn. May 25, 2018) (citation omitted). "Plaintiff seeks only the name and permanent address of the IP address subscriber[]. Such identifying information is narrowly tailored, requesting no more than would be required to identify the relevant individual." *Strike 3*, 2020 WL 3567282 at *8. In short, Plaintiff's proposed discovery—a subpoena for the identity of a specific individual, assigned a specific IP address, on a specific date and time (recorded down to the second) when infringement occurred—is narrowly tailored and sufficiently specific.

18

### 4. The Purpose of the Requested Discovery and the Need for the Information Sought in Order to Advance the Claim Favors Granting Relief.

"[T]he purpose of the requested discovery[] is clear and narrow: to identify the subscriber[] of [the] IP address[] connected with various copyright infringement activities." *Strike 3*, 2020 WL 3567282 at *8. "Binding Circuit-level precedent advises courts to grant limited discovery in circumstances where a plaintiff may not otherwise have access to means for identifying John Doe defendants." *Id.* (citing *Alston*, 363 F.3d at 233 n.6).

Similarly, the need for this "crucial evidence" cannot be understated. "[T]he identity of the defendant is critical to the ability of the plaintiff to serve process on defendant and proceed with the litigation." *Malibu Media, LLC v. John Does 1-15*, No. 12-2077, 2012 WL 3089383, at *8 (E.D. Pa. July 30, 2012); *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004). And, "[o]nce in possession of Defendant's name and address, Plaintiff can investigate and confirm it has a good faith basis for believing it has found the infringing party." *Strike 3*, 2019 WL 4855039 at *2. Without receiving Doe's identity—to complete its investigation and, if appropriate, to amend its complaint and serve process— Plaintiff cannot proceed with its lawsuit to protect its copyrights. "[T]he protections provided to these copyright holders by the Copyright Act would evaporate, unless copyright holders are permitted to engage in this discovery."

*W. Coast Prods., Inc. v. Does 1-1,434*, No. 11-55, 2012 WL 10132002, at *4 (D.D.C. Aug. 6, 2012); *see also Strike 3*, 2019 WL 4745360 at *6 ("Plaintiff must be able to enforce its rights[.]"). "Unless the rules are construed to allow some reasonable method to determine against whom that claim should be asserted, Plaintiff will have presumably suffered a federal statutory wrong with no remedy. That is not just." *Strike 3*, 2020 WL 3567282 at *11 (footnote omitted).

### 5. The Discovery Does Not Burden Doe or Require Doe to Respond in an Expedited Manner.

These factors do not preclude authorizing this discovery because, "[i]n the most literal sense, the discovery sought imposes no burden at all on Defendant[], as it [is sought] from and will be produced by a third-party, the ISP." *Strike 3*, 2020 WL 3567282 at *8. Courts within this District routinely deny motions by doe defendants to quash court-authorized ISP subpoenas on the grounds of "undue burden," since they impose no burden on the doe defendants. *See, e.g.*, *Malibu Media, LLC v. Doe*, No. 12-07789, 2014 WL 229295, at *1 (D.N.J. Jan. 21, 2014) ("Because the subpoena is directed to a third party, [Doe] cannot establish that it imposes an undue burden upon him.").

### 6. There Are No "Alternative Means" to Uncover Doe's True Identity.

At this early stage in litigation, Plaintiff has a limited view into Doe's true identity, since it only knows the offending IP address and the works they

downloaded and distributed, but cannot uncover Doe's identity without court assistance. *See supra* Sec. III.B.1. "BitTorrent software is 'largely anonymous' except insofar as it requires a user to broadcast the user's IP address," *John Wiley & Sons, Inc.*, 284 F.R.D. at 190, and, therefore, "Plaintiff can identify Defendant only through his IP address[.]" *Strike 3 Holdings, LLC v. Doe*, No. 18-2648, 2019 WL 78987, at *1 (S.D.N.Y. Jan. 2, 2019). Indeed, "BitTorrent's appeal to users is the large degree of anonymity it provides," and "[a]bsent a Court-ordered subpoena, many of the ISPs, who qualify as 'cable operators' for purposes of 47 U.S.C. § 522(5), are effectively prohibited by 47 U.S.C. § 551(c) from disclosing the identities of [the defendants] to Plaintiff." *Strike 3 Holdings, LLC v. Doe*, No. 18-569, 2018 WL 4109394, at *2 (W.D.N.Y. Aug. 28, 2018) (citations and internal quotation marks omitted); *see also Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 352–53 (D.D.C. 2011).

By virtue of the architecture of the Internet, and the qualified privacy interest created by the CCPA, 47 U.S.C. § 551(c), there are no "other means by which Plaintiff could gather the information it seeks, and the narrow nature of its request[] appear[s] to provide the only reasonable way to obtain it. Such further militates in favor of granting the relief sought." *Strike 3*, 2020 WL 3567282 at *9 (citation omitted).

### 7. Doe's Minimal Privacy Interest Is Substantially Outweighed by Plaintiff's Interest in Protecting Its Copyrights.

Finally, at this juncture, Doe's privacy interest is "truly speculative," *Strike 3*, 2020 WL 3567282 at *11, and—at best—minimal and outweighed by Plaintiff's interest in protecting its copyrights. While "[s]ome courts have gone so far as to find that internet users have constitutional privacy interests in their internet browsing and file-sharing . . . these privacy interests must not be used as a shield behind which internet users can commit unabated, legally actionable behavior." *Id.* at *10 (citations omitted). "In general, privacy rights do not grant users a license to infringe on copyrighted material. Thus, to the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by subscribers or other persons, it is unprotected by the First Amendment." *Id.* (citation omitted); *see also U.S. v. Christie*, 624 F.3d 558, 574 (3d Cir. 2010) (holding there is no Fourth Amendment privacy interest in IP address).

Although the CCPA recognizes that subscribers have a privacy interest in not having their identities publicly disclosed, the Act expressly recognizes it is a qualified interest, and specifically provides that courts can order that identifying information be disclosed. *See* 47 U.S.C. § 551(c). Importantly, this privacy interest does not foreclose the requested discovery, it merely requires that a Court determine whether it is appropriate to allow the subpoena to the ISP, which may be done subject to an appropriate "limited protective order" that "balances the

22

Plaintiff's right to pursue its claims and the concomitant right of access to court proceedings enjoyed by the public with . . . legitimate privacy interests" of Doe. *Strike 3*, 2020 WL 3567282 at *11; *Strike 3 Holdings, LLC v. Doe*, 330 F.R.D. 552, 555 (D. Minn. 2019) (reversing decision that privacy concerns required denial of request to serve subpoena prior to a Rule 26(f) conference); *see also CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) ("There is no privilege or restriction on releasing customer records to a nongovernmental entity pursuant to a court order") (citing 47 U.S.C. § 551(c)(2)(B)).

As other courts in this District have correctly recognized when denying motions to quash similar court-authorized ISP subpoenas, Plaintiff's right to protect its copyrights outweighs a subscriber's "diminished" right to privacy in these matters. *Strike 3 Holdings, LLC v. Doe*, No. 18-14138, D.E. 15 at *2 (D.N.J. June 27, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-12609, D.E. 16 at *5 (D.N.J. June 27, 2019); *see also Strike 3*, 2019 WL 78987 at *4.

### C.    Plaintiff Takes No Position on the Entry of a Protective Order.

In the past, Plaintiff has respectfully suggested that Courts consider implementing protective orders when authorizing early discovery to account for concerns—often raised, but *never* substantiated—that Plaintiff might or could

engage in coercive litigation tactics.[6] *See Strike 3*, 2019 WL 78987 at *4 (noting that allowing litigation under a pseudonym "removes much, if not all, of the leverage that a plaintiff would possess to unduly coerce [a defendant] into settlement.") (citation omitted). However, some courts have held that—even in the absence of *any* evidence of improper litigation tactics—it is (or at least appears) improper for Plaintiff to assent to such relief.[7] While Plaintiff respectfully disagrees that its motivation—or any action it has taken—is improper, in an abundance of caution Plaintiff takes no position at this time as to whether the Court

---

[6] *See, e.g., Strike 3*, 964 F.3d at 1205, 1213 (reversing decision that maligned Plaintiff as a "copyright toll" by "drawing unsupported, negative inferences against Strike 3 regarding its litigation tactics" as an abuse of discretion because "[t]he facts before the district court did not support these conclusions"); *Strike 3*, 2020 WL 5525549 at *4, *5–6 (observing claims of settlement coercion were "entirely speculative and unsupported"); *Strike 3 Holdings, LLC v. Doe*, No. 18-12585, 2019 WL 5446239, at *6 (D.N.J. Oct. 24, 2019) (finding, after two (2) days of evidentiary hearings, that "even though numerous cases discuss the fact that Strike 3 has or may engage in abusive litigation practices, the Court has not seen evidence that this occurred in its cases"), *rev'd on other grounds*, 2020 WL 3567282 (D.N.J. June 30, 2020); *Strike 3*, 2019 WL 4745360 at *6–7 (observing that allegations of abusive litigation tactics lacked "any evidence").

[7] *See Strike 3 Holdings, LLC v. Doe*, 637 F. Supp. 3d 187, 199–200 (D.N.J. 2022) (denying motion to seal consent judgment and expressing that Plaintiff's "assent" to an anonymity request is a "cause for concern," while noting that "there is no evidence presently before the Court that Plaintiff has, in fact, engaged in improper settlement tactics in resolving its claims against Defendant") (footnote omitted). *Cf. Strike 3 Holdings, LLC v. Doe*, No. 21-17860, 2022 WL 2274473, at *3 (D.N.J. June 23, 2022) (denying motion to seal pleadings after parties resolved claim and noting that "[t]o be clear, the Court does not suggest that Plaintiff or its counsel have acted improperly[.]"); *see also Strike 3 Holdings, LLC v. Doe*, No. 21-5178, 2022 WL 2276352 (E.D. Pa. June 22, 2022).

should permit Doe to defend this claim under a pseudonym or require documents identifying Doe to be filed under seal and has removed all provisions related to those forms of relief from its proposed order.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court grant leave for Plaintiff to issue a Rule 45 subpoena to Doe's ISP.

DATED: 01/04/2024                    Respectfully submitted,

**THE ATKIN FIRM, LLC**
*Attorneys for Plaintiff,*
*Strike 3 Holdings, LLC*

By:    */s/ John C. Atkin, Esq.*
       JOHN C. ATKIN